UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RONALD RAE MCPHEE,

    Plaintiff,

v.                          Case No. 3:21cv858-MCR-HTC

SERGEANT D. BARLOW, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald Rae McPhee files this action asserting claims under the Eighth Amendment for excessive use of force against Sergeant Barlow and for deliberate indifference to a serious medical need against Nurse Williams. Before the Court is Defendant Nurse Williams's motion for summary judgment, ECF Doc. 101. Upon consideration of the motion, Plaintiff's opposition, ECF Doc. 120, and the relevant law, the undersigned finds the motion should be GRANTED and judgment be entered in favor of Nurse Williams.

**I.    UNDISPUTED FACTS¹**

On December 22, 2017, Plaintiff presented to the Delta Dormitory medical triage room at the Santa Rosa Correctional Institution ("SRCI") for sick call, complaining of low back pain. ECF Doc. 101-1 at 1–5. Present in the triage room were Defendant Sergeant Barlow, Officer William Parker, Nurse Williams, and Nurse Coultas. *See id.*; *see also* ECF Doc. 101-3 at 2. Plaintiff was evaluated by Nurse Coultas, who prescribed ibuprofen and instructed him to start back stretches. ECF Doc. 101-1 at 4–5. Nurse Williams heard Plaintiff threaten Nurse Coultas, stating: "I'll kill you, you fuckin bitch," and saw him take a step towards Nurse Coultas. *Id.* at 3; *see also* ECF Doc. 101-1 at 3, 101-3 at 2.

Subsequently, Officer Barlow used force to transport Plaintiff back to his cell.² ECF Docs. 92 at 6–8, 101-1 at 1–3. Once Plaintiff was inside his cell, Nurse Williams arrived to conduct a post-use-of-force examination.³ ECF Docs. 92 at 9; 101-3 at 2. Plaintiff showed Nurse Williams his injuries through the glass window. *See* ECF Docs. 101-2 at 9:05-9:06 (handheld video); 101-3 at 3. Plaintiff complained of "serious pain" and stated he felt "like something in [his] arm could have been torn apparent [sic] or broken." ECF Docs. 92 at 9. Plaintiff also asked

---

¹ The relevant facts are taken from Plaintiff's second amended complaint, ECF Doc. 92, the medical records, the use-of-force reports, and the declarations submitted by the parties.
² Whether force was necessary is irrelevant for purposes of this Report and Recommendation.
³ Nurse Williams was accompanied by an officer with a handheld video. Nurse Williams filed a copy of the video under seal for the Court's review. *See* ECF Docs. 100, 105. The video is discussed below.

Nurse Williams to have him pulled out of his cell for treatment. *Id.* Nurse Williams, however, did not do so. *See id.* at 10.

Under FDOC policy, if FDOC personnel consider a prisoner to be a security risk, the inmate must be secured in their cell for a "calming down" period and cannot be taken out until FDOC personnel determine the inmate no longer poses a security risk. ECF Doc. 101-3 at 2–3. Until that time, post-use-of-force examinations are generally conducted cell front to ensure the inmate is not in imminent danger of serious physical harm or suffering from an emergency medical condition that warrants immediate attention. *Id.* Nurse Williams did not have authority to order FDOC employees to let Plaintiff out of the cell, absent such a medical emergency. *Id.* at 3.

Upon examination, Nurse Williams did not find Plaintiff to be in any acute distress or pain. *Id.* She found him to be alert, oriented, and able to respond to her questions orally. *Id.* Nurse Williams determined Plaintiff's injuries did not constitute a medical emergency for which immediate action was necessary. *Id.* at 4. Also, although Plaintiff contends he had "a knot or lump 'the size of a golf ball'" sticking out of his arm, ECF Doc. 92 at 9, Nurse Williams did not observe any such injury, ECF Doc. 101-3 at 3. Nurse Williams did, however, observe "a contusion and swelling to [Plaintiff's] right wrist," which she determined did not require immediate medical attention. *Id.* at 3–4; *see also* ECF Doc. 101-1 at 6. Nurse

Williams instructed Plaintiff to keep his right arm elevated to alleviate the swelling, to take ibuprofen, and to return to sick call. ECF Docs. 92 at 10; 101-1 at 6; 101-3 at 4. Nurse Williams also referred Plaintiff to a mental health provider for a follow up to the use of force incident. *See* ECF Doc. 101-1 at 8.

Twelve hours later, Plaintiff presented to sick call. ECF Doc. 101-1 at 9. Plaintiff was examined by Nurse B. Bray who observed a "deformity" on Plaintiff's right forearm, with skin intact. ECF Docs. 92 at 10; 101-1 at 9–10. Nurse Bray observed the nailbeds of Plaintiff's right fingers were "pale/bluish" and were "cold to touch." ECF Doc. 101-1 at 9. She contacted a physician and Plaintiff was transported to Baptist Hospital's Emergency Room for evaluation, where he was diagnosed with a finger sprain, wrist sprain, and a hematoma, and prescribed ibuprofen and acetaminophen for the pain. *Id.* at 9–10, 12–19. Upon Plaintiff's return to SRCI, Nurse Bray applied elastic bandage wrap to Plaintiff's arm per Baptist's instructions and issued him a recreational yard pass. *Id.* at 20–22.

On January 10, 2018, Plaintiff was evaluated by a physician at Santa Rosa for a follow up. ECF Doc. 101-1 at 23. Plaintiff reported soreness around his wrist and was observed with a "4 cm soft, hematoma" on his right forearm. *Id.* Medical notes indicate Plaintiff's finger movement and wrist movement were minimally painful and he had good range of motion. *Id.* The physician prescribed naproxen and

advised Plaintiff to keep his arm elevated and to begin flexion and extension exercises for his hand. *Id.*

On March 15, 2018, Plaintiff submitted another sick call request, complaining of forearm pain. ECF Docs. 101-1 at 24–26. This time, he was seen by Nurse Williams. Nurse Williams observed a large, soft lump on Plaintiff's wrist, with moderate swelling. ECF Docs. 101-1 at 25; 101-3 at 4. Plaintiff reported his pain was a 4/10 and did not report any numbness or tingling. ECF Doc. 101-3 at 4. Nurse Williams "immediately" notified a clinician because of a concern he might have a fracture or dislocation, gave Plaintiff ibuprofen, and instructed him to keep his arm elevated and to ice the affected area. *Id*. Nurse Williams did not see Plaintiff again for his wrist/forearm pain after March 15.

Based on Nurse Williams's referral, a physician submitted an order for x-rays of Plaintiff's right wrist and forearm, which were completed on March 21, 2018. ECF Doc. 101-1 at 28–29. The x-rays showed no acute fracture, dislocation, or destructive bony process. *Id.* at 29. However, on May 30, 2018, when Plaintiff was seen by a physician for a follow-up, the physician noted that the x-ray was not of the "lump" on Plaintiff's forearm. *Id.* at 30. Thus, he ordered a second x-ray. *Id.* at 31–32. After additional follow-ups and sick call requests, Plaintiff was referred to a surgeon, who saw him on November 6, 2018. *Id.* at 33–38. On February 21, 2019, Plaintiff ultimately underwent surgery during which "a subcutaneous, soft tissue

mass was excised" from his right forearm. *Id.* at 41; *see also* ECF Doc. 92 at 11. The post-surgical pathology report diagnosed the mass as a "lipoma." ECF Doc. 101-1 at 42.

## II.  SUMMARY JUDGMENT STANDARD

To prevail on her motion for summary judgment, Nurse Williams must show Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If she successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248 (1986) (emphases omitted). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

## III. ANALYSIS

The crux of Plaintiff's claim against Nurse Williams is that she acted with deliberate indifference to his serious medical need when she failed to pull Plaintiff from his cell for post-use-of-force treatment of the swelling to his wrist/forearm.

To state a claim for medical deliberate indifference, Plaintiff must allege facts sufficient to meet an objective and subjective element. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). As to the objective element of his claim, Plaintiff must present evidence sufficient to demonstrate he suffered from a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To satisfy the subjective component of his claim, Plaintiff must present evidence to establish that Nurse Williams acted with deliberate indifference to his serious medical need. *See Farmer*, 511 U.S. at 834. Specifically, Plaintiff must show Nurse Williams (1) had subjective knowledge of the risk of serious harm to Plaintiff and (2) disregarded that risk by conduct that was more than mere or even gross negligence. *See Farrow*, 320 F.3d at 1245. A prison official acts with

deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "The official must both be aware of facts from which the inference could be drawn . . . and [she] must also draw that inference." *Id.* Deliberate indifference requires the defendant to have a subjective "state of mind more blameworthy than negligence," and closer to criminal recklessness. *Id.* at 835.

As discussed below, the undersigned agrees with Nurse Williams - Plaintiff has failed to present evidence sufficient to support either element.

**A. Serious Medical Need**

Plaintiff was diagnosed with a lipoma on his right wrist, which was surgically removed over a year after the use-of-force incident. Plaintiff argues the lipoma is a serious medical need but fails to provide any authority to support that position. *See* ECF Doc. 120. Instead, Plaintiff appears to argue that he must have suffered a serious medical need because officers, using handcuffs as leverage, "twisted" his arms and bent his fingers back beyond their flex point. *Id.* at 1. While Plaintiff may have suffered a more than de minimis injury from the use of force, the undersigned finds Plaintiff has not shown he suffered a serious medical need.

A lipoma is a benign growth of fat cells in a thin, fibrous capsule usually found just below the skin. *See Maddrie v. Parekh*, 2008 SL 2608105, at *1 (M.D. Fla. July 1, 2008). It is generally not considered a serious medical need, and Plaintiff has

presented no evidence to the contrary. *Id.* at *4; *see Glaze v. Hall*, No. CV 304-64, 2006 WL 360643, at *4 (S.D. Ga. Feb. 15, 2006) (referring to the "webmd" internet site and noting "[t]he condition is rarely serious and does not cause pain"); *see also Flores w. Wellborn*, 119 Fed. App'x. 6, 7 (7th Cir. 2004) (referring to doctor's affidavit that lipoma could not be source of plaintiff's pain because a lipoma contains no nervous tissue).

As Nurse Williams points out in her motion, Plaintiff reported only moderate pain two weeks after the injury, but nonetheless had good range of motion with minimal pain. *See* ECF Doc. 101-1 at 23. In March, when he saw Nurse Williams, he reported pain of 4 on a scale of 10. During subsequent examinations, the lipoma was noted to be "nontender." *Id.* at 30, 34. Moreover, despite several examinations, surgical intervention was not recommended for more than a year. Thus, while a lipoma can be a serious medical need if it is accompanied by constant or persistent pain or debilitating symptoms, Plaintiff has presented no evidence that it reached that level here. *See, e.g.*, *Martinez v. Hedrick*, 36 F. App'x 209, 211 (7th Cir. 2002) (finding plaintiff failed to submit evidence that his lipoma was a serious medical need, where "medical records indicate that he complained only that the lipoma was tender when touched, that he could not sleep on his left side, and that doctors considered removal an elective procedure"); *Whitehead v. Mahone*, 2011 WL 3241352, at *6 (C.D. Ill. July 29, 2011) ("where the Plaintiff can allege only

generalized symptoms of discomfort generated by a lipoma, summary judgment tends to be granted").

### B. Deliberate Indifference

Regardless, even assuming the lipoma was a serious medical need, Nurse Williams is nonetheless entitled to summary judgment because Plaintiff cannot show that Nurse Williams acted with a culpable state of mind.

First, the undisputed evidence shows that Nurse Williams did not perceive Plaintiff was at risk of serious harm when she examined him. Although Nurse Williams identified a contusion or swelling on Plaintiff's right wrist, she did not find him to be in any acute distress. Instead, Nurse Williams found Plaintiff to be alert and responsive. Thus, Plaintiff has failed to show that Nurse Williams was subjectively aware he faced a serious risk of harm if she did not take him out of the cell or provide him with additional treatment. *See Cannon v. Corizon Med. Servs.*, 795 F. App'x 692, 697 (11th Cir. 2019) (finding plaintiff's claims that his leg was swollen and miscolored is not sufficient to establish that these symptoms made it obvious that his leg was broken or in need of greater care than that which was provided to him).

Second, Nurse Williams did not act with deliberate disregard to any risk associated with Plaintiff's medical condition. As stated above, Plaintiff's primary complaint about Nurse Williams is that she did not take him out of the cell to conduct

a more thorough examination of him. Nurse Williams explains in her affidavit, however, that she did not have the authority to remove Plaintiff from his cell because Plaintiff was considered by officers to be a security risk at the time.

"When evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight." *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1275 (11th Cir. 2020) (citing *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014)). Although the Eighth Amendment prohibits cruel and unusual punishment, it does not "disable prison administrators from refusing an inmate's treatment request (no matter how medically sound) on the ground that it would threaten institutional security." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1274 n.5 (11th Cir. 2020).

Here, while Plaintiff states in the response that he disputes threatening Nurse Coultas, Plaintiff presents no evidence to rebut the evidence presented by Nurse Williams. Plaintiff does not state under penalty of perjury that he did not threaten Nurse Coultas or take a step toward her. The facts Plaintiff includes in his second amended complaint start with Plaintiff leaving the triage room; thus, there is nothing in the second amended complaint that is contrary to the facts presented in Nurse Williams's Declaration. Also, Plaintiff does not contend Nurse Williams is lying

about what she saw or heard in the triage room, nor does Plaintiff suggest Nurse Williams has any reason to lie.

Instead, relying on a grievance attached to Sergeant Barlow's prior motion to dismiss, Plaintiff states in his response that the statement he recalls making after Nurse Coultas had declined to treat his back was "Okay, we done," and immediately afterwards Defendant Barlow became aggressive. ECF Doc. 120 at 3; *see also* ECF Doc. 30-1 at 1. The grievance, however, is insufficient to raise a dispute of material fact. It does not preclude a finding that Plaintiff made other statements to Nurse Coultas which he may not recall. Moreover, in denying the grievance, Lt. Stokes noted that Plaintiff received a DR for making verbal threats (as well as disobeying orders).[4]

Similarly, while Plaintiff also disputes that he was noncompliant or disruptive when he was being transported to his cell or when Nurse Williams examined him, he fails to present any evidence to dispute that FDOC officers identified him as a security risk and, after being so identified, Nurse Williams was without authority to remove him from his cell. In Nurse Williams's Declaration, she explains that under FDOC policy, when a prisoner poses a security risk, she is prohibited from entering the prisoner's cell or asking that he be removed. Under the policy, Nurse Williams

---

[4] Nurse Williams also submits a Report of Force Used from the FDOC, in which she and Sergeant Barlow noted that Plaintiff threatened Nurse Coultas. *See* ECF Doc. 101-1 at 1–3.

Case No. 3:21cv858-MCR-HTC

was allowed to conduct only a cell-front examination to determine whether Plaintiff was "in imminent danger of serious physical harm or suffering from an emergency medical condition warranting immediate medical attention." ECF Doc. 101-3 at 2–3. Nurse Williams did not find either circumstance existed, and nothing in the medical records show otherwise.

Thus, the undisputed evidence shows that Nurse William limited her immediate treatment of Plaintiff, not based on a wanton disregard to his needs, but based on a security concern. Nurse Williams's failure to remove Plaintiff from the cell for the examination, when she found no medical necessity to do so, is simply not deliberate indifference. *See Bieber v. Wisconsin Dept. of Corr.*, 62 F. App'x 714, 718 (7th Cir. 2003) (affirming summary judgment in favor of medical providers where there was no evidence any believed a brace was essential to treat plaintiff's injury and evidence showed brace was denied because metal in the brace posed a security risk); *Ross v. Davidson Cnty. Sheriff's Off.*, 2019 WL 4573507, at *8 (M.D. Tenn. Sept. 20, 2019) (dismissing claim for deliberate indifference because "it is clear that Plaintiff was not denied dental floss based upon deliberate indifference to his serious medical needs but instead was denied the floss based upon the security risk to the other inmates").

To the contrary, the undisputed evidence shows that Nurse Williams examined Plaintiff as best she could under the circumstances, noted his injuries, and

provided him with some treatment. Nurse Williams can be seen in the video pointing to the area of her own wrist where Plaintiff's contusion appears to be for the officer to document. She can also be seen asking Plaintiff to move his wrist up and down and demonstrating how to do so. Additionally, she is seen directing Plaintiff to keep his arm elevated above his head and, again, demonstrating for him how to do so. It is further undisputed that she directed Plaintiff to take ibuprofen for the pain and swelling[5] and gave him a referral for a mental health evaluation based on the use of force.

Nurse Williams also advised Plaintiff to return to sick call for a follow-up, which he sought later that evening. Plaintiff was seen by Nurse Bray and was taken to Baptist ER for x-rays. Like Nurse Williams, the professionals at Baptist prescribed ibuprofen for Plaintiff. Moreover, the next and only time Nurse Williams saw Plaintiff was in March—a few months after the incident—and upon examining his arm, Nurse Williams referred him directly to a clinician to evaluate a possible fracture. Nothing that Nurse Williams did in her treatment of Plaintiff was deliberately indifferent.

---

[5] Plaintiff argues the video does not show Nurse Williams giving Plaintiff any ibuprofen. Nurse Williams, however, does not state in her Declaration that she gave him ibuprofen. Instead, she says that she advised him to take ibuprofen, which was available to him through the dorm box. ECF Doc. 101-3 at 4.

Case No. 3:21cv858-MCR-HTC

Plaintiff's claim against Nurse Williams, at best, is about a dispute over medical treatment, which does not rise to the level of a constitutional violation. Plaintiff contends Nurse Williams should have done more at the time she examined him, but even if that was true, Nurse Williams did not violate the Eighth Amendment. *See Sessoms v. Thornton*, 2014 WL 4477409, at *3 (N.D. Cal. Sept. 10, 2014) ("In the absence of any evidence that there was a medical need to treat plaintiff's condition more quickly, plaintiff has simply shown a personal disagreement between plaintiff's lay opinion and the opinion of medical doctors as to the proper course of treatment. Such a disagreement, as noted above, is not sufficient to create a genuine factual dispute as to whether the treatment he received for his hematoma was medically inadequate, let alone a violation of his Eighth Amendment rights."); *see also Whelen v. Penouilh*, 2009 WL 86667, at *9 (E.D. La. Jan. 13, 2009) (finding failure of institution to provide a cane because of security concerns amounted to a mere disagreement over treatment, which did not rise to a constitutional violation).

Accordingly, it is respectfully RECOMMENDED that:

1. Defendant Nurse Williams's Motion for Final Summary Judgment, ECF Doc. 101, be **GRANTED.**

2. The clerk enter judgment in her favor.

At Pensacola, Florida, this 14th day of February, 2023.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days of the date of this Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1.